IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CONCEPT INNOVATION, et al., )
)
    Plaintiffs and Counter-Defendants, )
)
    v. )
)
CFM CORPORATION, et al., )
)
    Defendants, Counter-Plaintiffs and )
    Third-Party Plaintiffs, )
)
    v. )
)
LUCAS PAI and ACTIVE GENE, INC., )
)
    Third Party Defendants, )
)
ACTIVE GENE, INC. )
)
    Third-Party Counterclaimant, )
)
    v. )
)
CFM CORPORATION and CFM U.S. )
CORPORATION, )
)
    Third-Party Counterclaim )
    Defendants. )

No.  04 C 3345

Suzanne B. Conlon, Judge

## MEMORANDUM OPINION AND ORDER

Concept Innovation, Inc. ("Concept") and Lucas Innovation, Inc. ("Lucas") sue CFM

Corporation, CFM U.S. Corporation a/k/a and d/b/a The Vermont Castings Majestic Products

Company, and CFM Home Products a/k/a and d/b/a The Great Outdoors Grill Company[1] (collectively "CFM") for infringement of several barbeque grill design patents. CFM counterclaims against Concept and Lucas, and asserts various third-party claims against Lucas Pai ("Pai") and Active Gene, Inc. ("Active Gene"), including claims to invalidate the barbeque grill design patents and to correct inventorship under 35 U.S.C. § 256. Concept, Lucas, Pai and Active Gene (collectively, "the Lucas entities") move to dismiss the counterclaims, third-party claims,[2] and affirmative defenses.

## BACKGROUND

For purposes of this motion, the court accepts all well-pleaded allegations in the counterclaims, third-party claims and affirmative defenses as true and draws all reasonable inferences in CFM's favor. *See Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000). CFM imports barbeques and barbeque accessories into the United States and Canada for sale to retail stores and conducts business in Illinois. CFM contacted Pai about manufacturing barbeques for CFM in China. After negotiating with CFM, Pai agreed to manufacture and import barbeques into North America for CFM. Pai then incorporated Active Gene to handle CFM's business. CFM and Active Gene thereafter agreed to collaborate on the development and design of the barbeques and to share equally in any intellectual property rights that stemmed from the development and design of the barbeques. Active Gene agreed not to sell the same or similar barbeques to anyone

---

[1]CFM Home Products disputes the court's entry of technical default. However, it has not moved to vacate the technical default. The issue is not properly before the court.

[2]The counterclaims and third-party claims are brought together in the same counts. For convenience, the court refers to both the counterclaims and third-party claims as the counterclaims.

other than CFM and not to solicit CFM's customers. CFM agreed to use Active Gene as its exclusive agent to manufacture the barbeques.

Pursuant to the agreement, CFM revealed confidential information to Pai regarding barbeque designs and characteristics, the Canadian barbeque marketplace and its customers' needs. Pai and Active Gene agreed to keep this information confidential and not to use it for their own benefit or to CFM's detriment. After entering the agreement, Pai secretly incorporated Concept Innovation, which then filed patent applications in its name in the United States and Canada for barbeques developed in part by CFM pursuant to the agreement. The patents issued to the Lucas entities. Although CFM or CFM and Active Gene jointly own the patents, the patents do not list the CFM employee-inventors because the Lucas entities misrepresented the identity of the inventors to the U.S. Patent and Trademark Office.

## DISCUSSION

### I. Legal Standard

The Lucas entities answered the counterclaims more than seven months ago, so their motion to dismiss is considered a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Lanigan v. Village of E. Hazel Crest*, 110 F.3d 467 , 470 (7th Cir. 1997). A motion to dismiss tests the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834, 839 (7th Cir.1999), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). A motion to dismiss should not be granted "unless it appears beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

## II. Count I and Affirmative Defenses 1 and 3: Patents are Invalid or Unenforceable for Misjoinder of Inventors

In Count I and affirmative defenses 1 and 3, CFM asserts the patents are invalid or unenforceable because the Lucas entities failed to correctly identify the inventors. The Lucas entities argue Count I and affirmative defenses 1 and 3 must be dismissed because they fail to plead inequitable conduct with particularity as required under Rule 9(b). CFM responds Count I and affirmative defenses 1 and 3 are not subject to Rule 9(b)'s heightened pleading requirements. Although the court need not decide whether Rule 9(b) applies, Count I satisfies the rule's pleading requirements. Count I alleges:

> As detailed above, [the patents] should be declared invalid and/or unenforceable because, among other things, [the Lucas entities] misled the U.S. Patent and Trademark Office during prosecution of the [patents] by omitting necessary inventors that were employees of CFM, and improperly naming others as alleged inventors.

Counterclaim ¶ 23. The counterclaim contains more specific allegations incorporated by reference into Count I: Pai secretly incorporated Concept Innovation to secure the patents without CFM's knowledge, and the Lucas entities falsely asserted they owned the patents when in fact they were owned by both CFM and Active Gene. Counterclaim ¶¶ 16-21. These allegations state the who (Lucas entities), what (misrepresentation of the real owners), where (U.S. Patent and Trademark Office) and when (during patent prosecution) of the alleged inequitable conduct.

The Lucas entities also argue CFM fails to plead the "operative fact" of intent. Although Count I does not explicitly allege that the Lucas entities operated with the intent to deceive, intent can be inferred from the allegations. Count I alleges that Pai secretly incorporated Concept

4

Innovation to obtain the patents, and that Pai and Lucas used Concept Innovation to secretly obtain the patents using CFM's confidential information, while falsely claiming to be the sole patent owners. Counterclaim ¶¶ 16-23. These allegations sufficiently infer an alleged intent to deceive.

The Lucas entities also argue Count I fails to state a claim because any improper inventorship can be corrected under 35 U.S.C. §256. They contend that because CFM pleads in the alternative for correction of the patents, Count I must be dismissed. This argument is frivolous. On its face, 35 U.S.C. §256 only allows for correction of a patent if the omission of a joint inventor was the result of error or mistake. *See also Merry Mfg. Co. v. Burns Tool Co.*, 335 F2d 239 (5th Cir. 1964). Count I does not allege that the Lucas entities mistakenly failed to identify all the inventors. Rather, CFM impliedly alleges the Lucas entities intentionally misled the U.S. Patent and Trademark Office as to the identity of the inventors. Thus, CFM states a claim for invalidity of the patents.

The motion to dismiss affirmative defenses 1 (invalid patent) and 3 (unenforceable patent) must also be denied. Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 2003 U.S. Dist. LEXIS 11487, at *6 (N.D. Ill. July 2, 2003). Although the affirmative defenses do not contain detailed factual allegations, the Lucas entities have sufficient notice of the facts giving rise to the affirmative defenses in light of the allegations in Count I of the counterclaim. Under these circumstances, striking the affirmative defenses would cause unnecessary delay and would be a waste of time. However, as plead, affirmative defenses 1 and 3 are limited in scope to the allegations set forth in Count I of the counterclaims.

### III. Count II: Violation of the Illinois Trade Secrets Act

Count II purports to state a claim for misappropriation under the Illinois Trade Secrets Act, 765 ILCS 1065/2 ("the act"). More specifically, CFM alleges it shared its confidential information, including grill designs and industry information, with Lucas entities, and Lucas entities misappropriated CFM's confidential information to solicit CFM's customers and potential customers. Counterclaim ¶¶ 13, 27, 30. CFM does not allege where the alleged misappropriation occurred.

To state a claim for trade secret misappropriation under the act, CFM must allege two elements: (1) the existence of a trade secret; and (2) misappropriation of that trade secret. *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 873 (N.D. Ill. 2001). CFM alleges each of these elements. First, CFM alleges it shared confidential information such as grill designs, customer lists, and industry information with the Lucas entities. Counterclaim ¶¶ 13, 27 and 30. Second, CFM alleges the Lucas entities misappropriated its confidential information by soliciting its customers and potential customers for competing business. Counterclaim ¶¶ 29, 31-33. CFM has alleged the necessary elements to state a claim under the act.

The Lucas entities argue Count II fails to state a claim because the act is limited in reach to Illinois residents. They assert a state statute can only be applied to defendants within the state's geographic boundaries. This argument must be rejected because a state statute may be applied to non-resident defendants. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 315-316 (1981) ("Mr. Hague's residence in Wisconsin does not–as Allstate seems to argue–constitutionally mandate application of Wisconsin law to the exclusion of forum law"). The act does not limit its application to Illinois residents. Thus, the territorial reach of the act is not statutorily limited to Illinois residents.

*See Davis v. Suran*, 1998 U.S. Dist. LEXIS 10237, at * 7 (N.D. Ill. June 30, 1998); *Faith Freight Forwarding Corp. v. Ruiz*, 1997 U.S. Dist. LEXIS 3641, at * 24 (N.D. Ill. March 20, 1997).

The Lucas entities further argue Count II fails to state a claim for misappropriation under the act because the alleged misappropriation did not occur in Illinois. In support of their argument, the Lucas entities cite several cases where the courts applied Illinois choice-of-law rules to decide whether Illinois *or another state's law* applied to a misappropriation claim. *See Fleet Mgmt. Sys., Inc. v. Archer-Daniels-Midland Co.*, 627 F. Supp. 550, 564 (C.D. Ill. 1986); *Crown Indus., Inc. v. Kawneer Co.*, 335 F. Supp. 749, 760-1 (N.D. Ill. 1971); *Mergenthaler Linotype Co. v. Storch*, 383 N.E.2d 1379, 1389-90, 66 Ill. App. 3d 789, 803 (1990). According to the Lucas entities, Count II must be dismissed because under Illinois choice-of-law rules, the law of the state where the misappropriation occurred would apply, and CFM has not alleged the misappropriation occurred in Illinois. *See Abbott Laboratories v. Chiron Corp.*, 1997 U.S. Dist. LEXIS 5596, at *6 (N.D. Ill. April 21, 1997); *Mergenthaler*, 66 Ill. App. 3d at 803, 383 N.E.2d at1389 (1st Dist. 1978); *Crown Industries*, 335 F. Supp. at 761.

Although CFM's counterclaim fails to allege where the Lucas entities misappropriated CFM's confidential information, it alleges the Lucas entities committed tortious acts in Illinois. Counterclaim ¶10. Thus, CFM implicitly alleges that the misappropriation occurred in Illinois. Drawing all reasonable inferences in CFM's favor, it may be able to establish facts that implicate violation of Illinois trade secrets law.

## IV. Count IV: Correction of Inventorship

The Lucas entities advance numerous arguments as to why Count IV should be dismissed. First, they claim CFM lacks standing to seek correction of inventorship pursuant to 35 U.S.C. § 256

7

because CFM, as the employer, is not the owner of the patent rights. Count IV plainly alleges that CFM owns the patent rights. Counterclaim ¶¶ 12 (b), 19. The court must accept these allegations as true and this argument fails.

Second, the Lucas entities argue Count IV must be dismissed for lack of standing and failure to join the CFM inventors who are necessary and indispensable parties. This argument must be rejected because CFM alleges that it owns the patent rights. CFM impliedly alleges that the employee-inventors assigned their rights to CFM. The assignment of rights in a patent divests the assignor of ownership and entitles the assignee to sue in its own right without joining the assignor. *See Proctor & Gamble Co. v. Kimberly Clark Corp.*, 684 F. Supp. 1403 (N.D. Tex. 1987); *DSM Resins v. EMS-American Grilon Inc.*, 1990 U.S. Dist. LEXIS 19079 (D.S.C. Feb. 27, 1990). Thus, the motion to dismiss Count IV for lack of standing and failure to join necessary and indispensable parties must be denied.

Third, the Lucas entities argue Count IV must be dismissed because it alleges the error in inventorship was made without CFM's deceptive intent, rather than without the deceptive intent of CFM's employee-inventors. This argument is frivolous because a corporation acts only through its agents. *Jansen v. Packaging Corp. of America*, 123 F.3d 490, 496 (7th Cir. 1997). CFM's alleged lack of deceptive intent may be attributed to CFM's employee-inventors. *See Kingvision Pay Per View, Ltd. v. Myths, Inc.*, 2001 U.S. Dist. LEXIS 2272, at *6-7 (N.D. Ill. March 5, 2001).

## V.   Count V: Fraud

In Count V, CFM alleges that during contract negotiations and as part of the agreement itself, Pai and Active Gene repeatedly represented to CFM that they were working on CFM's behalf and would not use CFM's confidential information to their advantage or to CFM's detriment.

8

Counterclaim ¶ 12, 28, 42-43. CFM also alleges Pai secretly incorporated a new company to obtain patents using CFM's confidential information and secured the patents without identifying CFM as an inventor. Counterclaim ¶¶ 16-18, 31, 43-33. The Lucas entities argue Count V should be dismissed for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). They argue the counterclaim fails to allege the "who, what, when, where and how" of the alleged fraud. *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Count V sufficiently alleges, either explicitly or implicitly, who made the misrepresentations (Pai and Active Gene), what the misrepresentations were (that they would not use confidential information for their own benefit), when and where the alleged misrepresentations were made (during negotiations and as part of the agreement itself) and to whom the statements were made (CFM). CFM alleges it reasonably relied on the Lucas entities' promises by divulging confidential information and paying fees. Counterclaim, ¶¶ 43-44. The counterclaim satisfies Rule 9(b)'s particularity requirement. *See Allied Vision Group, Inc. v. RLI Vision Corp.*, 1997 U.S. Dist. LEXIS 10805, at * 17 (N.D. Ill. July 18, 1997) (complaint satisfied Rule 9(b) by alleging a corporation committed a tort without identifying the corporate agents who performed the tortious acts); *Steadfast Ins. Co., Inc. v. Auto Marketing Network, Inc.*, 2 F. Supp. 2d 1058, 1061 (N.D. Ill. 1998).

The Lucas entities argue Count V fails to plead fraud because it is based on a promise of future conduct, which is not actionable. Under Illinois law, an allegation of a mere promise of future conduct, without more, is not actionable as fraud.[3] *Sa-Buttar Health & Med., P.C. v. TAP Pharmaceuticals, Inc.*, 2004 U.S. Dist. LEXIS 12175, at *11 (N.D. Ill. July 1, 2004); *Doherty v. Kahn*, 289 Ill. App. 3d 544, 682 N.E.2d 163, 176 (1st Dist. 1997). However, Illinois law recognizes

---

[3]CFM and the Lucas entities apply Illinois law to the fraud claim.

a "scheme exception." *Allied Vision Group,* 1997 U.S. Dist. LEXIS 10805, at *12. Promissory fraud is actionable if it is part of a larger pattern of deception that reasonably induces reliance. *Steadfast,* 2 F. Supp. 2d at 1060. A scheme to defraud may exist where a defendant lies repeatedly to a single promisee. *See HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 545 N.E.2d 672 (1993).

CFM alleges Pai and Active Gene *repeatedly* represented to CFM that they were working on CFM's behalf and would not use CFM's confidential information for their own benefit and to CFM's detriment. Counterclaim ¶ 42. CFM alleges Pai secretly formed another company for the purpose of obtaining patents with CFM's confidential information. Counterclaim ¶¶ 16-18. A fair reading of these allegations is that Pai and Active Gene's repeated promises not to improperly use CFM's confidential information were false when made, and were part of a scheme to fraudulently secure patents. Viewing the allegations in Count V in the light most favorable to CFM, it appears that CFM may be able to prove a set of facts to support its fraud claim entitling it to relief. The motion to dismiss Count V must therefore be denied.

## VI. Count VII: Tortious Interference with Business Relationship

In Count VII, CFM alleges the Lucas entities, without justification, pursued CFM's customers and potential customers by attempting to enter contracts with them to supply grills that would have otherwise been provided by CFM. CFM alleges it has been and will continue to be injured by the Lucas entities' conduct. Counterclaim ¶¶ 60-63. The Lucas entities argue these allegations fail to state a claim because they do not allege the Lucas entities interfered with a business relationship.

To state a claim for tortious interference with business expectancy under Illinois law, CFM must allege: (1) it had a valid business relationship or reasonable expectancy of entering into a valid business relationship; (2) the Lucas entities had knowledge of the relationship or expectancy; (3) the Lucas entities' intentional and unjustifiable interference induced or caused a breach or termination of the relationship or expectancy; and (4) damage to CFM resulted from the interference. *See Voyles v. Sandia Mortgage Corp.*, 196 Ill.2d 288, 300-1, 751 N.E.2d 1126 (2001). CFM alleges each of these elements. First, CFM alleges it had established business relationships with customers and potential customers. Second, CFM alleges it introduced the Lucas entities to its customers and potential customers. Third, CFM alleges the Lucas entities, without justification, pursued at least two of its customers and potential customers and attempted to enter contracts with them to provide grills that would have otherwise been provided by CFM. Fourth, CFM alleges it has been and will continue to be injured by the Lucas entities' conduct. Counterclaim ¶¶ 60-63.

The Lucas entities argue Count VII must be dismissed because it does not allege they entered a contract with any of CFM's customers or potential customers. This argument fails because the issue is not whether a CFM customer actually contracted with the Lucas entities, but rather whether the Lucas entities caused a customer or potential customer to terminate its relationship with CFM. Although not specifically incorporated by reference into Count VII, the counterclaim alleges that the Lucas entities used confidential information to procure contracts with at least one of CFM's potential customers. Counterclaim ¶ 68. It may reasonably be inferred from the allegations of Count VII that the Lucas entities' tortious interference caused CFM to lose at least one contract in favor of the Lucas entities. Consequently, the motion to dismiss Count VII must be denied.

## VII.    Count IX: Unjust Enrichment

In Count IX, CFM alleges the Lucas entities have been unjustly enriched by the retention and use of CFM's confidential information and exclusive ownership of the patents. Counterclaim ¶¶ 72-73. The Lucas entities move to dismiss Count IX because they are joint owners of the patents. Therefore, their retention of the benefits derived from the patents cannot be unjust. They cite no authority for this argument.

To plead a claim for unjust enrichment, CFM must allege that the Lucas entities have unjustly retained a benefit to CFM's detriment against the fundamental principles of justice and equity. *Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund*, 219 Ill. App. 3d 707, 579 N.E.2d 1003 (1st Dist. 1991). CFM alleges the Lucas entities have unjustly retained the benefits of the confidential information and exclusive ownership of the patents. Counterclaim ¶¶ 72-73. CFM alleges the Lucas entities' improper retention of the benefits violates CFM's rights. Counterclaim ¶¶ 29, 31, 73. When read in conjunction with the allegations incorporated by reference into Count IX, these allegations sufficiently state a claim for unjust enrichment under Illinois law.[4]

The Lucas entities seek dismissal of Count IX to the extent it is based on inventorship on the ground that this issue is preempted by federal patent law. Federal preemption takes three basic forms: First, Congress may explicitly preempt state law; second, a federal scheme may occupy a given field and thus preempt state law in that field; and third, when compliance with both state and federal law is impossible, the conflicting state law is preempted. *University of Colorado v. American Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003). Whatever the form, the key is whether the

---

[4]All parties apply Illinois law to Count IX.

operation of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* A state may not offer patent-like protection to intellectual creations that would otherwise remain unprotected as a matter of federal law. *Id.*

In *University of Colorado*, the Federal Circuit held an unjust enrichment claim was not "patent-like" at all because an unjust-enrichment claim "springs not from an attempt to enforce intellectual property rights," but instead from the unlawful use of confidential information. *Id.* at 1306. "The fact that [defendant] improperly secured the . . . patent and used this patent to obtain incremental profits only pertains to restitution for the unjust enrichment claim." *Id.* Similarly, in Count IX, CFM seeks to recover the alleged improper benefits retained by the Lucas entities as a result of their alleged improper use of confidential information and patents. Count IX does not undermine the purposes of the federal patent laws and therefore is not preempted by federal patent law. *Id.* at 1307.

## VIII. Count X: The Lanham Act

In Count X, CFM asserts a claim for product design trade dress infringement under the Lanham Act, 15 U.S.C. §1125(a). More specifically, CFM alleges the Lucas entities falsely designated the origin of their grills by marketing grills substantially identical in ornamental appearance to CFM's grills. As a result, the Lucas entities allegedly benefitted from CFM's goodwill and reputation. The Lucas entities argue Count X fails to state a claim for product design trade dress infringement under the Lanham Act because it does not allege that CFM's grills acquired secondary meaning.

To establish a claim for product design trade dress infringement under the Lanham Act, CFM must show that: (1) its trade dress has acquired secondary meaning, and (2) that the similarity of the

defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 636 (7th Cir. 1999). The Supreme Court made clear that in an action for infringement of unregistered trade dress under §43(a) of the Lanham Act, a product's design is protectible only upon a showing of secondary meaning. *Wal-Mart Stores*, 529 U.S. at 216. Secondary meaning is acquired when "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654 (7th Cir. 1995), *citing, Qualitex Co. v. Jacobson Products Company, Inc.*, 514 U.S. 159, 115 S. Ct. 1300, 1303 (1995).

Liberally construing the allegations of Count X, they do not imply that CFM's grill design acquired a secondary meaning. For instance, CFM does not allege that the grill design had a unique product feature that identified CFM as the source of the product. There is not even a conclusory allegation of secondary meaning in the counterclaim. Consequently, Count X of the counterclaim must be dismissed without prejudice.

**IX.   Count XI: Conversion**

In Count XI, CFM alleges the Lucas entities converted the patents by "assert[ing] possession" of them to the exclusion of CFM. Counterclaim ¶¶ 80-82. The Lucas entities seek dismissal of Count XI for two reasons. First, they claim intellectual property cannot be converted under Illinois law. Second, they argue the conversion claim is preempted by federal patent law.

As to the first argument, it is unclear whether Illinois courts recognize a claim for conversion of intangible property. In *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 692 N.E.2d 1327 (1st Dist. 1998), the court restated the principle that an action for conversion lies only for tangible

14

personal property. However, Illinois appellate courts have recognized an action for conversion of intangible assets in *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 856, 692 N.E.2d 798 (1st Dist. 1998), and *Conant v. Karris*, 165 Ill. App. 3d 783, 520 N.E.2d 757 (1st Dist. 1987). In *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 305 (7th Cir. 1990), the court considered whether a defendant was liable for converting confidential business information. In discussing whether intangible property could be the subject of conversion, the Seventh Circuit observed: "As Prosser and Keeton have noted. . . 'there is perhaps no valid and essential reason why there might not be conversion' of intangible property." *Id.* The court also noted the modern trend in state law to allow claims for conversion of intangible property, citing *Conant v. Karris*, 165 Ill. App. 3d 783, 520 N.E.2d 757 (1st Dist. 1987). *See also United States v. Grandeau*, 350 F. Supp. 2d 765 (N.D. Ill. 2004) ("The tort of conversion was originally limited to cases involving intangible property, but has since expanded to cases involving intangible property").

The court need not decide this issue because the conversion claim is preempted by federal patent law. As set forth above in Section VII, the relevant inquiry in deciding preemption is whether the state law claim stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *University of Colorado*, 342 F.3d at 1305. The Lucas entities cite *Methode Elecs., Inc. v. Hewlett-Packard Co.*, 2000 U.S. Dist. LEXIS 12701 (N.D. Cal. May 3, 2000), in support of their argument. *Methode* held a conversion counterclaim was preempted by federal patent law because the fundamental premise of the claim was that the defendant should have named plaintiff as an owner of the patent. *Id.* at *9. Similarly, in *Malik v. Lynk, Inc.*, 1999 U.S. Dist. LEXIS 14811, at *8 (D. Kan. Aug. 18, 1999), a conversion claim was dismissed as preempted by federal patent law because the claim was based on defendant's use of plaintiff's patent, conduct

15

that is clearly governed by patent law. *Id.* at *12. CFM provides no contrary authority. The court is persuaded that CFM's conversion counterclaim is preempted by federal patent law because the fundamental premise of the claim is that the Lucas entities unlawfully possess the patents by virtue of their failure to name CFM's employee-inventors on the patents. The resolution of this issue is governed by patent law. Therefore, Count XI is dismissed with prejudice as preempted by federal patent law.

## CONCLUSION

The motion to dismiss is granted in part and denied in part. Count X of the counterclaims and third-party claims are dismissed without prejudice. Count XI of the counterclaims and third-party claims are dismissed with prejudice. The motion is denied in all other respects.

March 21, 2005

ENTER:

Suzanne B. Conlon
United States District Judge